968 F.2d 1214
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Allen D. HEFLIN, and wife Jean LaRue Heflin, as natural
parents and next of kin of Hugh Allen Heflin, deceased; Rhu
Ellen Heflin, as the surviving sister of Hugh Allen Heflin,
deceased, Plaintiffs-Appellants,
v.
STEWART COUNTY, TENNESSEE, a political subdivision of the
State of Tennessee; David Hicks, in his official capacity
as Sheriff of Stewart County; Joe Henry Crutcher and Wanda
Luffman, in their official capacities as Deputy Sheriffs of
Stewart County, Defendants-Appellees.
 Nos. 91-6219, 91-6160.
 United States Court of Appeals, Sixth Circuit.
 July 13, 1992.
 
 Before KENNEDY and ALAN E. NORRIS, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Plaintiffs appeal the post-judgment order granting a reduced award of attorney's fees following their successful prosecution of a civil rights action. For the reasons set forth below, we AFFIRM in part and REVERSE in part the order of the District Court.
 
 I.
 
 2
 On the morning of September 3, 1987, Hugh Allen Heflin was arrested and taken to the Stewart County jail. He was then admitted to a single occupant cell. Around 11:45 that morning, Heflin hung himself from the bars of the cell. He masked his actions by leaving his shower running, and by gagging himself with a rag. Sometime shortly after noon, jail officers were alerted to the fact that something was amiss in Heflin's cell. Defendant Crutcher went to the cell, discovered the hanging body, and went to get help. After summoning aid, Crutcher checked the body for vital signs but found none, and otherwise did not disturb the body. Two county emergency medical technicians ("EMTs") and the county sheriff arrived shortly thereafter, and they too checked for vital signs, found none, and left the body undisturbed. Finally, the county medical examiner arrived, performed a preliminary check, directed that the body be cut down, and ultimately declared Heflin deceased.
 
 
 3
 Heflin's parents and sister then sued the county and the personnel involved, alleging two theories of recovery. The first theory alleged a misclassification of Heflin in his admittance to the jail, in that the jail administrators failed properly to assess and classify Heflin as a suicide risk. This misclassification by the jail admission personnel was alleged to have been a violation of Heflin's constitutional rights under the Eighth and Fourteenth Amendments, and therefore grounds for recovery by his surviving parents and sister under 42 U.S.C. § 1983. The defendants on this claim were the county, the sheriff, the deputy sheriff who arrested the decedent and booked him into the jail (Deputy Watkins), another deputy sheriff who assisted in checking the decedent into the jail (Deputy Crutcher), and the jailer who admitted the decedent and who was responsible for observation of decedent's welfare.
 
 
 4
 The second principal claim related to the failure of defendants to cut Heflin's body down and begin administering first aid upon discovery. Under this theory, defendants were deliberately indifferent to the serious medical needs of Heflin in a manner that a reasonable officer would have known to have been violative of his clearly established rights. There was testimony that the county maintained a policy of leaving suicide victims as discovered, despite the medical practices (CPR, etc.) available to possibly resuscitate victims. Named as defendants on the second claim were the jailer on duty at the time, the deputy who first arrived (Deputy Crutcher), the county EMTs and sheriff who responded to the call, and the county itself.
 
 
 5
 All defendants moved for summary judgment on both claims. The District Court awarded the defendants summary judgment as to the misclassification theory, but not as to the "leave hanging" policy. At trial, plaintiffs prevailed on the latter theory, and the jury awarded $104,000 in damages for the deprivation of the decedent's civil rights, and $50,000 in damages for the plaintiffs' deprivation of their civil rights to decedent's society and companionship. That award was affirmed on appeal.
 
 
 6
 Plaintiffs then filed with the trial court a motion with supporting affidavits seeking an award of attorney's fees, requesting fees totaling $198,131 and an enhancement of twenty percent. The court considered all of the affidavits tendered, and defendants' motion in opposition to the award, and granted plaintiffs attorney's fees in the reduced amount of $133,999.50. Plaintiffs now take exception to several elements in the reduction. Specifically, plaintiffs allege that the District Court improperly segregated their claims, determined that they prevailed on only one of two claims, and incorrectly reduced the amount requested for the period, i.e., until summary judgment was granted, by one half. Plaintiffs also allege that the court erroneously awarded fees without granting a requested evidentiary hearing.
 
 II.
 
 7
 We review an award of attorney's fees under an abuse of discretion standard. In assessing fees, courts are to consider the degree of success attained. A plaintiff should not have a fee award reduced simply because it did not prevail as to each and every contention raised in the suit. A party that prevails as to one discrete matter should not, however, automatically be considered a prevailing party as to any and all claims raised in the complaint, and therefore eligible for attorney's fees encompassing all aspects of the litigation.
 
 
 8
 There is no precise rule or formula for determining the extent to which a party is a "prevailing party," and the extent to which fees are properly attributable to the "success of the litigation." The Supreme Court has noted:
 
 
 9
 [i]n some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where claims are brought against the same defendants--often an institution and its officers, as in this case--counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate results achieved."
 
 
 10
 Hensley v. Eckerhart, 461 U.S. 424, 435 (1983) (quoting Davis v. County of Los Angeles, 8 E.P.D. p 9444, at 5049 (C.D.Cal.1974)).
 
 
 11
 In this case, the trial court reasoned that the misclassification theory was substantially discrete and separate from the "leave hanging" claim. The former involved an administrative process, checking Heflin into the jail and assigning him a cell. The actors principally involved were the arresting deputy and the jailer. The "leave hanging" claim involved an entirely different time period, i.e., the period after Heflin's body was discovered. The primary actors involved were those immediately on the scene, notably Crutcher, and those summoned to render aid, the EMTs and sheriff. The nature of the actions involved, and indeed the wrong alleged, differed between the claims. The mere fact that both alleged a causative effect with respect to Heflin's death does not inherently render them legally inseparable. The discovery with respect to each claim was significantly different in both subject and scope. The trial court's consideration of the two claims as discrete theories, as to only one of which efforts were reasonably expended in pursuit of a successful outcome, therefore, was not an abuse of discretion.
 
 
 12
 Plaintiffs submitted attorney time sheets and records that did not differentiate between the two claims alleged. They now claim that this supports their argument that the fee award should not be split by claim. We disagree. Rather, it simply makes the allocation less precise, and more difficult for the court to administer. Plaintiffs should maintain aggregate time sheets at their own peril, not at that of defendants. In this case, plaintiffs' own complaint listed two discrete causes of action, with separate defendants, relating to separate incidents and wrongs alleged. Aggregate billing records are prima facie inadequate in such circumstances and are submitted at plaintiffs' risk. The District Court's use of the rough approximation of a factor of one half of the total time, based upon the discovery and research conducted up to the time summary judgment was granted on the misclassification theory, was not an abuse of discretion when more precision was impossible due solely to plaintiffs' records.
 
 
 13
 Finally, plaintiffs allege that the District Court erred in awarding reduced attorney's fees without first granting their request for an evidentiary hearing. Although as a general rule such hearings are favored, and a reasoned basis in the record is required to substantiate a fee award, the court here did not abuse its discretion. The court had before it voluminous affidavits, time sheets and motions with supporting affidavits, exhibits and memoranda. The court made detailed factual findings relative to each attorney's time, as well as to other related costs and expenses. Failure to conduct a full evidentiary hearing in this case was not an abuse of discretion.
 
 III.
 
 14
 The District Court's attorney's fees order includes defendant Luffman. The liability judgment against her was reversed by this Court. Plaintiffs are not entitled to an award of fees against her. The order of the District Court is REVERSED in that respect. In all other respects the order of the District Court is AFFIRMED.